UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THAMAR CORTINA, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELCH FOODS, INC., A COOPERATIVE, a Michigan Corporation d.b.a. WELCH'S; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.   12-10070<br><br>CLASS ACTION |

**CLASS ACTION COMPLAINT**

Plaintiff THAMAR CORTINA ("Plaintiff") brings this action against Defendant WELCH FOODS, INC., A COOPERATIVE, a Michigan Company (doing business as "Welch's" and headquartered in this District) and Does 1 through 10 (collectively, "Defendant") on behalf of herself and all others similarly situated, and makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record:

**PRELIMINARY STATEMENT**

1.  Plaintiff files this class action to cause Defendant to disclose the presence of dangerous substances in its juice products sold throughout the United States and consumed by adults, and, more frequently, children, and to restore monies to the consumers who purchased the products during the time that Defendant failed to make

1

such disclosures.

2.     Defendant manufactures, markets, distributes, and sells "Welch's 100% Grape Juice" (the "Contaminated Juice").

3.     The Contaminated Juice contains material and significant levels of arsenic and lead, which are carcinogens and developmental toxins known to cause health problems to consumers, especially children. Exposure to arsenic and lead in food or liquids over time, unlike many other poisons, causes cumulative build up of these toxins in the body. Build up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

4.     Defendant has advertised and sold the Contaminated Juice without any label or warning indicating to consumers that these products contain arsenic and lead, or that one or both of these toxins can over time accumulate in the drinker's body to the point where lead and/or arsenic poisoning, injury and disease, including cancer, will occur.

5.     Defendant's omissions are false, misleading, and reasonably likely to deceive the public, especially in the light of Defendant's affirmative representations that imply that the Contaminated Juice is healthy and safe.

6.     Consumers, in purchasing the Contaminated Juice, for themselves and their families, reasonably expect and anticipate that these products are healthy and safe. Non-disclosure and concealment of lead and arsenic in the Contaminated Juice by Defendant is intended to and does in fact cause consumers to purchase a product Plaintiff and the Class would not have bought had disclosure been made. As a result of its omission and concealment, Defendant has generated substantial sales of the Contaminated Juice.

7.     Plaintiff brings this action on behalf of herself and other similarly situated consumers within the United States who purchased the Contaminated Juice, in order to

cause the disclosure of the presence of material and significant levels of arsenic and lead in the Contaminated Juice, to correct the false and misleading perception Defendant has created in the minds of consumers that the Contaminated Juice is safe and healthy for themselves and their families, and to obtain redress for those who have purchased the Contaminated Juice.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction in this action under 28 U.S.C. Section 1332(d)(2)(A) because this is a class action in which the matter in controversy exceeds $5,000,000 and Plaintiff and members of the Class are not citizens of Massachusetts, Defendant's state of citizenship.

9. This Court has personal jurisdiction over Defendant because Defendant, has its headquarters and principal place of business in, and is authorized to do business in, the Commonwealth of Massachusetts.

10. Venue is proper under 28 U.S.C. Section 1391(b)(2) because Defendant resides in the district, many of the acts and transactions giving rise to this action occurred in this District and Defendant is subject to personal jurisdiction in this District.

## PARTIES

11. At all times relevant to this matter, Plaintiff resided and continues to reside in San Diego County, California. During the class period, Plaintiff purchased the Contaminated Juice in reliance on the omission and concealment of warnings regarding the presence and levels of arsenic and lead, and suffered injury in fact and lost money as a result of the unfair competition and material omissions described in this Complaint.

12. Defendant WELCH FOODS, INC., A COOPERATIVE (doing business as

3

"Welch's") is incorporated in the State of Michigan and is headquartered in Concord, Massachusetts. The Contaminated Juice is sold nationwide at retail and online.

13.     The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated as a DOE are unknown to Plaintiff at this time and therefore Plaintiff sues Defendants by such fictitious names. Plaintiff will ask leave of the Court to amend this Complaint to show the true names and capacities of the DOE Defendants when that information has been ascertained. Plaintiff is informed and believes that each of the Defendants designated here as a DOE is legally responsible in some manner and liable for the events and happenings alleged in this Complaint and proximately caused harm to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

### I. Arsenic and Lead Are Hazardous Carcinogens and Developmental Toxins Which Cause Severe Health Problems.

14.     Arsenic is a metallic substance used in agricultural insecticides. Use in United States agriculture for human consumption has been banned. Arsenic and many of its compounds are poisonous to humans. Arsenic, unlike many other poisons, builds up in the body over time as a person is exposed to and ingests it, resulting in a cumulative exposure that can, over time, become toxic and seriously injurious to health. Metabolic interferences caused by acute or chronic exposure to arsenic can lead to death from multi-system organ failure.

15.     Arsenic and arsenic compounds are classified as Group 1 Carcinogens by the International Agency for Research on Cancer ("IARC").

16.     The Food and Drug Administration ("FDA") has set standards that regulate the maximum parts per billion ("ppb") of arsenic permissible in water: bottled water cannot contain more than 10 ppb of total arsenic. *See* 21 C.F.R.

165.110(b)(4)(iii)(A).

17.  Lead is a metallic substance formerly used as a pesticide in fruit orchards, but the use of such pesticides is now prohibited in the United States.  Lead, unlike many other poisons, builds up in the body over time as a person is exposed to and ingests it, resulting in a cumulative exposure that can, over time, become toxic and seriously injurious to health.  Lead is an especially poisonous metal for children, as exposure can cause severe nervous system damage.  Lead exposure can also cause blood and brain disorders.  Lead poisoning can occur from ingestion of food or water containing lead.  Acute or chronic exposure to material amounts of lead can lead to severe brain and kidney damage in adults and children, miscarriages, as well as reduced fertility in males, and ultimately cause death.

18.  The FDA has set standards that regulate the maximum parts per billion ("ppb") of lead permissible in water: bottled water cannot contain more than 5 ppb of total lead.  *See* 21 C.F.R. 165.110(b)(4)(iii)(A).

### II.  Defendant's Grape Juice Contains Material and Significant Levels of Arsenic and Lead.

19.  Defendant's "100% Grape Juice" contains up to 12.4 ppb of total arsenic and up to 9.23 ppb of total lead.

20.  These levels are significantly higher than the FDA limits for bottled water: 10 ppb of total arsenic and 5 ppb of total lead.  *See* 21 C.F.R. 165.110(b)(4)(iii)(A).

**III.     Defendant's Deceptive Omissions.**

21.     Defendant manufactures, markets, distributes, and sells the Contaminated Juice with the following label, which fails to disclose and omits the presence of lead or arsenic, or the serious health concerns associated with arsenic or lead ingestion:



22. Defendant's website provides the following description of the Contaminated Juice, which fails to disclose the presence of lead or arsenic, or the significant health concerns associated with ingestion of lead or arsenic:



(*See* http://www.welchs.com/products/100-percent-grape-juice/100-percent-grape-juices/100-percent-grape-juice (last visited Jan. 10, 2012)).

23.     Defendant omits from its labeling and online advertising that material and significantly high levels of arsenic and lead are present in the Contaminated Juice. At the same time, Defendant utilizes marketing and advertising to imply that the Contaminated Juice is safe and healthy, including the following statements: "Helps support a healthy heart," "100% juice," "No added sugar, color or flavor," "One serving (1/2 cup) of fruit in every 4oz glass," and "120% daily value of the antioxidant vitamin C per 8oz serving."

24.     As a result of Defendant's omissions, a reasonable consumer would have no reason to suspect the presence of arsenic and lead in the Contaminated Juice without conducting his or her own scientific tests, or reviewing third party scientific testing of these products.

25.     Defendant has reaped millions of dollars in profits by failing to disclose to consumers that the Contaminated Juice contains arsenic and lead, and leading consumers to believe that the Contaminated Juice is a healthy juice beverage. Consumers would not have purchased the Contaminated Juice had they known the truth: that the Contaminated Juice contains the material levels of arsenic and lead that it does.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff incorporates by reference each former paragraph of this Complaint.

27.     Plaintiff brings this class action on behalf of herself and a class of all persons who purchased the Contaminated Juice in the United States (the "Class"). Excluded from the Class are Defendant, officers, directors, and employees of Defendant, any entity in which Defendant has a controlling interest, the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant, any federal, state or local government entity, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

28. The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that there are thousands, if not millions, of purchasers of the products at issue.

29. This action satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) because it involves questions of law or fact common to the member of the Class that predominate over any questions affecting only individual members, including:

    a. Whether Defendant violated G.L. c. 266 §91;

    b. Whether Defendant's representations and advertisements concerning the Contaminated Juice constitute unfair or deceptive acts or practices in violation of G.L. ch. 93A §2;

    c. Whether Defendant initiated and thereafter maintained a deceptive marketing campaign by failing to notify consumers of the arsenic and lead content in the Contaminated Juice;

    d. Whether Defendant's representations and conduct are likely to deceive consumers about the arsenic and lead content in the Contaminated Juice;

    e. Whether, by its misconduct as set forth here, Defendant has engaged in unfair, deceptive, untrue, or misleading advertising;

    f. Whether Defendant has been unjustly enriched;

    g. Whether Defendant has breached an implied warranty;

    h. Whether the members of the Class have been injured by Defendant's conduct;

    i. Whether Plaintiff and the Class are entitled to relief, and the amount and nature of such relief; and

    j. Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

30. The claims of the Plaintiff class representative are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class and

Defendant has no defenses unique to Plaintiff.

31.     Plaintiff will fairly and adequately protect the interest of the Class and has retained attorneys experienced in class and complex litigation.

32.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because it is economically impractical for members of the Class to prosecute individual actions, the Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation.

33.     A class action will cause an orderly and expeditious administration of the claims of the Class.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

34.     Plaintiff does not anticipate any undue difficulty in the management of this litigation.

35.     Plaintiff and the Class expressly exclude any claims for bodily harm or personal injury arising from Defendant's conduct.

## FIRST CAUSE OF ACTION

**(Untrue and Misleading Advertising under G.L. c. 266 §91)**

36.     Plaintiff incorporates the allegations contained in all previous paragraphs as if fully set forth here.

37.     Plaintiff brings this cause of action on behalf of herself and on behalf of the Class.

38.     Defendant's labeling, advertising, marketing, and promotion of the Contaminated Juice is deceptive and misleading, in violation of G.L., c. 266, §91.

39.     At all times relevant, Defendant knew or, upon reasonable investigation, could have ascertained that its labeling, advertising, marketing, and promotion of the Contaminated Juice were deceptive and misleading.

40.     Defendant's deceptive and misleading labeling, advertising, marketing, and

promotion of the Contaminated Juice is continuing as of the present date.

41. As purchasers of the Contaminated Juice who were injured by Defendant's deceptive and misleading advertising (in that Plaintiffs and other Class members purchased a product they would not have purchased had Defendant disclosed the content of arsenic and lead in the Contaminated Juice), Plaintiff and the Class are entitled to and do bring this class action to seek all available remedies under G.L. c. 266, §91, including injunctive relief. The injunctive relief would include an Order directing Defendant to cease its misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

42. Plaintiff and the Class have suffered injury in fact as a result of Defendant's conduct because they purchased the Contaminated Juice.

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranty)

43. Plaintiff incorporates the allegations contained in all previous paragraphs as if fully set forth here.

44. Plaintiff brings this claim individually and on behalf of the Class.

45. Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Contaminated Juice.

46. The terms of that contract included the implied promises of merchantability that (1) the product was fit for the ordinary purpose for which it was intended, i.e., human consumption, and (2) the product was adequately contained, packaged, and/or labeled.

47. The terms of the contract also included an implied promise of fitness for a particular purpose, i.e., human consumption, in which Defendant had reason to know the particular purpose for which Plaintiff and Class members required the juice products and

Plaintiff and Class members relied on Defendant's skill and judgment to select and furnish suitable products that were fit for that purpose.

48. These implied warranties became part of the basis of the bargain, and were part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

49. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

50. Defendant breached the terms of this contract with Plaintiff and the Class, including the implied warranties of merchantability and fitness for a particular purpose, by not providing juice products that were fit for the purpose of human consumption and which were inadequately labeled and advertised due to Defendant's failure to disclose the products' arsenic and lead content.

51. As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the purchase price of the Contaminated Juice they purchased.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

52. Plaintiff incorporates the factual allegations contained in all previous paragraphs as if fully set forth here.

53. Plaintiff brings this claim individually and on behalf of the Class.

54. Defendant sold the Contaminated Juice based on deceptive and misleading advertising, including failure to disclose material facts, as stated more fully above.

55. Plaintiff and other Class members conferred a benefit upon Defendant in the form of the price of the Contaminated Juice sold by Defendant.

56. Defendant has been unjustly enriched by collecting the price of the Contaminated Juice.

57. Defendant's acceptance or retention of this money is inequitable under the circumstances as outlined above.

58. Plaintiff, on behalf of herself and the Class, seeks restitution of the full price of all Contaminated Juice purchased by members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

A. An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B. Individual restitution and disgorgement of Defendant's revenues to Plaintiff and each member of the Class;

C. An order requiring Defendant to immediately cease its wrongful conduct as set forth above, and to remedy that conduct, including by way of a corrective advertising campaign;

E. For reasonable attorneys' fees and the costs of this action;

F. For statutory pre-judgment interest; and

G. For such other relief as this Court may deem just and proper.


////////

////////

////////

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of her claims to the extent authorized by law.

Dated: January 11, 2012

Respectfully Submitted,
Plaintiff THAMAR CORTINA

By her attorneys,

 /s/ Howard Friedman
Howard Friedman, BBO #180080
hfriedman@civil-rights-law.com
David Milton, BBO #668908
dmilton@civil-rights-law.com
LAW OFFICES OF HOWARD FRIEDMAN PC
90 Canal Street, Fifth Floor
Boston, MA 02114-2022
Tel: (617) 742-4100; Fax: (617) 742-5858

Tina Wolfson, CA Bar No. 174806
twolfson@ahdootwolfson.com
Robert Ahdoot, CA Bar No. 172098
rahdoot@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Tel: (310) 474-9111;  Fax: (310) 474-8585

Michael F. Ram, CA Bar No. 104805
mram@rocklawcal.com
J. Kirk Boyd, CA Bar No. 122759
kboyd@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI
555 Montgomery Street, Suite 820
San Francisco, California 94111
Tel: (415) 433-4949; Fax: (415) 433-7311